The first case on our call this morning is Agenda Number 23, Case Number 107787, The Citizens National Bank of Paris v. Kids Hope United. Mr. Cash, you may proceed. My name is Richard Cash, and I'm here to represent the trustees, Citizens National Bank. I'm requesting that you affirm the original decision of the trial court and reverse that of the appellate court. Fortunately, the facts of this case are not in great controversy. The Edgar County Children's Home was created before the turn of the century, originally as an orphanage, and was incorporated with the state. Subsequently, it had its articles and corporation amended, I believe, in 1980. There were two trusts created, the Laferne Blackman Trust, in her will, and she died in 1967. And in her trust, she left some farmland, which was to pay 75 percent of the income to the Edgar County Children's Home and 25 percent to the Edgar County Cemetery. That trust further contained language provided in the event either or both of the foresaid organizations should cease to operate or exist. Then said bank, as trustee, is to distribute said portion or portions of said net income to such charitable organization or organizations as it deems worthy of said money. Her sister, Ms. Davis, also set up a trust, and she died in April of 1971. Again, providing farmland would be placed in the trust with 75 percent of the income to the Children's Home and 25 percent to that same cemetery. And it further provided that in the event either of the foresaid organizations shall cease to function in its present capacity, then the part of the trust fund which would have gone to that organization should be divided equally between them. And then it named three specific charitable organizations, being the First Methodist Church of Paris, the Paris Memorial Foundation, the Edgar County Chapter of the American Cancer Society. In July of 2003, Edgar County Children's Home merged with Kids Hope United, and at that point ceased to exist. The statutes provide that when a merger occurs, there will be the one corporate entity that continues, and the other one shall for all intents and purposes cease to exist. All the assets, liabilities, and responsibilities are then transferred over to the new corporation. It's our position that at that point, these provisions then come into effect. The standard of review, since we're on motions for summary judgment, is a de novo standard by this court to determine whether there is any factual question on whether it should be granted. The primary consideration which this court has expressed repeatedly in determining what is meant by a trust or a will is to discover the settler's intent, which the court will then effectuate if it's not contrary to law or public policy. This intent is to be determined as of the time the instrument is executed, and this court has indicated that in determining the intent, the court must consider the plain and ordinary meaning of the words used, and the intent must be ascertained by the entire document. Mr. Cash, you mentioned public policy. Are there any reasons why we shouldn't adopt the appellate court's reasons on public policy issues? I don't see any reason. I think for public policy issues, if it was a case perhaps where the money was to go to some individual or other non-charitable cause, perhaps that would be something where for public policy purposes, we'd want to continue the charitable nature of the gift. But these gifts are to continue in maybe different charity, but in their charitable nature, so I don't see a public policy provision for that. Does that answer your question? Yes, thank you. Okay, thank you. If I understood your earlier comment that once the children's home was assimilated or merged into or taken over by Huddleston and then Kids Hope United, since that corporation ceased to exist, that was the end of the bequest to that corporation or the right to receive the income. Would your argument be the same if Huddleston had continued to operate the Edgar County Children's Home in the same fashion? I think that that's an important part. And as we look at some of the cases the appellate court looked at, for example, it referred to the Higgins case, the Iowa case. And in that case, there was a bequest made to two colleges back in the 30s, Drake College and Penn College. Penn College came into a position where they had some financial difficulties and a new college was formed called William Penn College. And it turned out the facts of that case showed that William Penn College had the same trustees as Penn College. They used the same facilities. They rented them and eventually acquired them. And then they eventually had the same faculty. And Penn College even continued in existence as a fundraising part of William Penn College. In that case, the Iowa court determined that, no, it shouldn't lapse. There was similar language in this case, that it's actually a continuation of the same thing. And I would think based on that language, if the children's home had been maintained and operated in a similar fashion, that case would seem to have some controlling impact in it, in that the same facility may be a different organization, but the same facility may be operated in the same condition. In this case, though, the statute provides a corporation terminated and ceased to exist. Eventually the property was liquidated. And it's not, I guess, a different title or company running the same business or structure. It's just entirely not there anymore. But, of course, under both scenarios, the original corporation would cease to exist. Yes. Or the corporation. Right. I would think that under that Hagen analysis and some of the others there may be a stronger argument that it should possibly be interpreted the way that the appellate court would have. I still think there's a strong argument that they, if we're looking at settlers intent, they say, hey, at the time we did this, there was a children's home, and now there is no more children's home. And we want other things to happen to our gifts. The children's home is no longer there. Would you wait just a second, counsel? Excuse me. I'm just trying to get by. You may proceed. Oh. Let me just. Because I'm trying. Just for a moment. I thought the trust provided that it ceased to operate or exist. The one trust did, the one, the Davis. I'm sure I got there. There's a little different language in the two trusts. You've been using cease to exist. Cease to exist or operate. That's correct. That's what it said. Yes. So is there a difference to treatment to be given to these different trusts? Well, I would say that on the cease to exist or operate, I don't see that as necessarily a different language. If it's not there, if it's not functioning, that would be the same scenario. You can operate in any different structure, even if the one structure that was in existence at the time of the trust no longer exists. That's true. That's true. In response to the other question, that may be if the facility is still running, still being operated, even though it's under a different name, then perhaps that would be an interpretation that would be permissible. And the purpose of the trust is still carried out? Well, assuming that in that scenario that it would be, yes. Is it important or relevant to consider what the function or how the Edgar County Children's Home was functioning at the time these trusts were made versus how they were functioning at the time of the after the merger? Right. Well, it's the bank's position that it's just not there functioning at all, period. So it really is immaterial. It's not a question of whether the kind of services they're providing to children and families in the community and so forth. Right. I understand that. And I think our statement of facts indicates that Kids Hope does provide some services. In the community as part of their, they represent a number of counties, and they have some foster care and some court appearances. So they do provide some services. How do you address the Attorney General's argument that 111.50B has never been held or understood to mean that a predecessor corporation merging into a successor corporation ceases to have an existence? Rather, they point the court to 50F for the proposition that the same activities are going on at Kids Hope. Well, I'm not sure the act provides, of course, it ceases to exist, but then it does provide that the corporation that still exists acquires all their property and their rights and their liabilities and continues to function. Our point is, though, from their perspective, I can see why they would say, well, this is money that was coming to Kids Hope, and it should be money that's coming to us. But we're looking at the perspective that it's what the testators wanted at the time they drafted the trust. The trust said that the gift was to stop when the children's home no longer existed. So we would say that it has ceased, and therefore that the income has stopped as of the point that it no longer existed, and then Kids Hope, as the merged corporation, would not necessarily be entitled to those proceeds. Is our obligation here to identify the testator's intent? I believe that's what the court has always indicated as the primary obligation in its trust or its will, yes. And what indicia is there of that, of the testator's intent, other than the words of the trust? Other than the plain language? And was there any other evidence presented? No, no. I mean, it was just basically that documents were presented to the court in the stipulation, so there was no testimony or anything along those lines. The only indication we have is what is in the will that Ms. Blackman intended. There would be some alternative distributions. I think Ms. Davis gave a stronger indication in her will, where she specifically mentioned other Edgar County charities that she wanted to receive the proceeds if the Edgar County Children's Home ceased to exist. You are basing it on ceasing to exist on the merger, right? Yes, the merger and then liquidation of the property, correct. Do you have problems with the opposing argument that Children's Home continue to operate through Huddleston and now Kids Hope? Right. It seems like you're making more of a ceasing to exist as kind of a technical argument with respect to a merger that took place, and technically it's not in place. But is the activity of Children's Home continuing through Huddleston and Kids Hope? Kids Hope has taken over some of the contracts that the Children's Home would have had with State of DCFS and things along those lines. Is that what you're – I mean, so there is some services that I understand that Children's Home are operating and are now being operated by Kids Hope United. Would your argument be the same if there was a merger and the only change that took place was the name change? No, I don't think so. You know, we look at some of those other cases. I mean, on one hand, you have the name change. You no longer have any of the board of directors. You no longer have any of the property. If you look at some of these other cases that have been cited, there's new entities using the other same facilities. You know, with the hospital cases where the hospital names were changed, well, but it was the same hospital, okay? With the one case, I think it was a Fuller case, Trimmer case with the two churches. Well, they left the gift with the one church, even though that church's name had changed because it was basically the same people operating the same thing. The church that no longer was following that, they said that gift lapsed. In the Higgins way, the case in Iowa, they're using the same facilities under different names but doing many of the same things. In this case, though, there is no corporation. There is no same board of directors. There is no property. So while we don't deny that Kids Hope offers many of the same services through foster care and some of those other things that the Children's Home was offering, we still think the intent is to benefit the Edgar County Children's Home, and it's no longer in existence even though some of the services are being provided by Kids Hope and elsewhere. Mr. Cash, you said that there were not the same board of directors. Are you talking about at the time in 2003 when the actual merger took place? Yes, I mean the board of directors of Children's Home was eliminated. They didn't keep the same board of directors. There were no additional, I mean those board of directors, some of them didn't go on to the new board. I think they may have for a short time, yes. There's no issue here that, in other words, the Edgar County Children's Home was providing services to children of Edgar County at the time of the trust. Yes. Oh, I'm sorry. Go ahead. And the Kids Hope is providing services to the children of Edgar County at this point. Is that fair? Yes. Now the nature and the amount, okay, the Children's Home started out as an orphanage. I think in 1980 it was converted more, changed their bylaws into a group home where they had kids from other wells besides Edgar County come and stay there. And then their services eventually went into homemaker services and some foster care services. I know from being in court that Kids Hope United offers assistance with DCFS. They offer some foster home placement. I don't know the full scope of it, but they do have some services that they offer to Edgar County people and elsewhere. So the argument isn't, well, this outfit doesn't even help people in Edgar County anymore. Right. There is some assistance to some people in Edgar County. The numbers, we don't know that. You're not arguing that one plan is superior over another even, are you? Pardon me? You're not arguing one plan is superior to the other? You mean that the Children's Home is better than the Kids Hope United? Is that what you're asking? I'm not asking that. I'm asking you if you have a position that favors one solution over the other. I mean, they seem to be very, very comparable, the two. They have many of the same comparable services. I would agree with that. Okay. Now, whether the number and the scope at the time, I don't have that information. But they do have a lot of the same services. Would the change in services sort of reflect the change in need, change in times in our community, the additional services that were added? Oh, you mean by additional services by Kids Hope or additional services by Child Care? Homemaking. I would, again, and there's no, I don't think, evidence in the record, other than just my experiences in the courtroom, I would say that probably somewhat less services than there were before, because at the time the Children's Home was running a group home and there was a number of other issues involved. They had a campus. They had some daycare provisions there. Those items are no longer present. But in terms of being of assistance to the court and foster care and making court appearances, Kids Hope still does some of that. Didn't the Kids Hope go through the original home, go through a period when handling orphan children went from orphanages to foster parents? Yes, I think probably. I think it was around 1980 they changed their charter or the Articles of Incorporation to provide for that. And I think starting in that time they went into more of a group home setting. Who changed the Articles of Incorporation? Children Home, Edgar County Children's Home. Filed with the Secretary of State to change the Articles of Incorporation, moved into more of a group home setting from strictly an orphanage setting. That would allow them to take contracts from DCFS for placement. Thank you. What is the relief you're requesting? Is it just that your motion for summary judgment be granted or this matter be remanded to the circuit court? I note that these wills were made in the 60s, and you're saying we're trying to determine each testator's intent. Was anything presented to the trial court as to what that intent was? Is it important as to what the home was operating as in 1960 as opposed to what it's operating as now? Well, the relief we're asking, second part of that question, there was no testimony presented along those lines. At the time was, I guess everybody's focusing more on whether the fact it closed and buildings sold and how much is that going to impact that. So there was a stipulation of facts presented. Request of the relief, we are asking you to go back and affirm what the trial court did and find that it has ceased to exist, that those limiting conditions that were put in by Ms. Blackman and Ms. Davis should be honored, which is the primary concern we think of the courts, and that the alternative provisions for the gifts should apply. That there shouldn't be any testimony or evidence offered as to if there could be as to what the intent was other than based upon the four corners of the documents. That's correct, Judge. Okay. I see my time's up, so we just ask you again to affirm the trial court and to grant Ms. Blackman and Ms. Davis their wishes as we see it and say that the alternate provision should apply. Thank you. Thank you. I am Assistant Attorney General Richard Hussack, and I'm counsel for the Attorney General in her capacity as the representative of the people of the state of Illinois who are by law the ultimate beneficiaries of all charitable gifts in Illinois. And I urge the court to affirm the appellate court's decision with respect to both trusts. They're separate trusts. They have different provisions as to the Blackman Trust, which had the restrictive provision, the gift over language that said that the gift to the home should lapse and the funds should go to alternative designated charities. If that organization ceased to operate or exist, the appellate court said that on this record, the proper conclusion is that none of the events identified triggered that lapse clause, that the entity by virtue of the merger did not cease to exist, that the successor took over its rights and responsibilities and specifically committed to continue its functions and did so, although there has been some variation over time in the exact services provided, largely due to the change or the evolution of society's views about how best to deal with dependent children and needy children in these circumstances. And with respect to the Davis Trust, again, the provision is different, and the appellate court said we need to get facts here to show whether within the meaning of that clause, whether the home as an organization had ceased to function in its then present capacity. Did the same attorney represent both the Blackman Trust and the Davis Trust? With respect to the drafting of the documents? Yes. It appears so, although I cannot see that clearly from the record, but it seems very much like they were drafted by the same attorney. They were certainly drafted by an attorney. If that is true, would there be any significance in determining intent that the language was changed from cease to operate or exist to cease to exist in one or the other? I wouldn't think so. I mean, it may be that each person had a separate specific intent or desire about when there might be a condition that would cause a lapse and trigger the gift over provision. Ultimately, the current circumstances at the time are relevant to determining what the settler's intent was in each of these cases, and that includes, and I think the Campfire Girls case decision by this court makes clear, you look at the surrounding circumstances to determine intent. You're not limited to the four corners of the document. And that case actually exemplifies very well that principle. And for the Davis Trust, I think the critical missing fact is we don't know how the organization, the Edgar County Children's Home, was functioning at that time when that trust was created. Now, I would like to sort of take a step back and clarify. Can I ask a question? Please do. Are you urging a remand? On the Davis Trust, yes, we are. It's essential to figure out the meaning of that language in the settler's intent regarding the continuation of the operations or functioning of the home as an organization in its then present capacity to know what it was. The record does not show that there was an orphanage that was still operating at the time. I think there's been argument to that effect, but the actual facts submitted by the limited stipulation provided by the parties before the Attorney General got involved leave out that sort of critically important element to be able to determine, you know, you've got a benchmark of comparison. We know that there is no orphanage today. I don't know that there were any orphanages open in Illinois at the time, at the operative time for determining the intent of the settler in this trust. And certainly they were providing foster care placement services, and the evolution in our society has been to try and do that on a proactive basis as early as possible, not having children languish in orphanages for years, but rather trying to get a placement right away. And that's the evolution of the pre-merger organization. We don't know how quickly that developed and exactly at what point the orphanage closed. But without that critical fact, I think the Circuit Court was unable to determine on this record whether either side should be granted summary judgment. And I want to comment here, too, about the fact that the Circuit Court rebuffed the suggestion that the Attorney General should be involved as a party in this case. I think this Court's precedents are awfully clear that the Attorney General, by common law and longstanding practice and now by statute, is the exclusive representative of the ultimate charitable beneficiaries of all charities in Illinois. And after the suggestion was made that we should be made a party, the Circuit Court said, oh, no, no, we don't, you know, we're not going to do that. Well, part of the problem with that is just generally is that it means that we had no role in developing the record for being able to determine how to interpret the intent, especially of the Davis Trust, where this critical fact is omitted. And I'm not going to cast, you know, blame or point accusatory fingers here about how that stipulation was prepared in the Circuit Court, but it is something that sort of highlights the significance of not neglecting this important role that the Attorney General plays in all these cases. I'd like to go back quickly to one point that I want. Let me ask you a question, Counsel. Please do. Would the Attorney General take the same position with regard to this language if, in fact, there were no services provided to families or children in Edgar County? If there was a merger and, you know, this organization was absorbed and they were providing services elsewhere but not there, would that, would then the, seemed like the settler's intent would be, well, it's obvious that they wanted to benefit Edgar County people and entities. I think the position would be different. I mean, you have the clear cases sometimes where a charitable entity no longer can fulfill the function for which the gift was made and they go on to doing something else entirely. And the court has stepped in and said, oh, no, you don't. You know, donative intent and honoring donative intent is important. And just because something was given for one charitable purpose doesn't mean it can be diverted to any other charitable purpose. No. There is a line that has to be drawn, but it's sort of a flexible, practical one. I think you have put your finger on one of the key points here, and that is that as there's been this sort of slow progression in the nature of services provided to underprivileged children and dependent children, Kids Hope not only committed to continue to provide services as the predecessor entity merged into it had provided historically, but also did so. It actually continued to provide foster placement services in Edgar County and to provide other types of services for needy and independent children in Edgar County. And I think that factor is very important to our position that the merger and change over time in the way those services provided did not trigger this lapse provision. I'd like to address quickly also Justice Burke's earlier comment or question. I have another question too. Does it make any difference that the property has been ceasing to exist for the purposes of Kids Hope? No, I don't think so. I mean, the natural approach to this is to look at a number of relevant factors, I suppose. It's sort of like a bundle of rights type analysis, and here it's a bundle of services. And the fact that nobody's really running orphanages anymore diminishes the significance to the fact that they don't have an organization, they don't need a property, and the expense that that would entail, that would be diminishing the resources that they could devote to providing the services that they do. Their mission here is to help children. It's not to continue to maintain an edifice or a museum for some historical nostalgic purpose. And I also did want to answer your question about the policy here. Although this case does not involve a cypre analysis, because there is the gift over provision, this is very common language in instruments. A trust or a will with a charitable bequest or a gift provision will often specify that there's a gift over in the event that the named entity should cease to exist. And if, unlike every other court that has addressed this issue, and I've cited them in our brief, and the appellate court has mentioned one of the landmark cases, the Hagen's Will case out of Iowa, if this court were to say that the language cease to exist is triggered whenever there's nothing more than a merger of two charitable entities with a succession of the operations of both into a new entity, the policy implications, I think, would be huge. Because it would suggest that all of a sudden we're giving a contrary interpretation to language that has a settled meaning, both in statutes and common law and in these provisions in these documents over many years. And there would be, to the extent word got out, a scramble among probate and estate lawyers to contact the people that are still alive that have signed these documents to ask them, wait a minute here, do we need to change this so that we can undo the fact that there's now a precedent in Illinois that goes contrary to all the other cases throughout the land. Some of those trusts and wills can no longer be changed. It's too late. The settler is no longer alive. The policy implications are very significant, and that is one of the reasons that we have sought to intervene in this case. I did want to make one little point before returning to the merits of the analysis on both cases. And that is, in our brief, we have mentioned the Campfire Girls' pronouncement that when you're dealing with a trust, the settler's intent is determined as of the time that the trust is executed. That is what the case said, but it seems a little bit unusual because normally when you have a trust provision in a will, as in this case, a testamentary trust, a will usually speaks from the moment of death. And I went back and looked at the Campfire Girls' case, and it is distinguishable on the ground that that was an inter vivos trust. And so the rule that they announced in that case is clearly applicable to an inter vivos trust, but the holding doesn't necessarily apply to a testamentary trust. I don't think that that will make a difference in this case, but I don't want the court to assume necessarily that the rule applicable in one setting necessarily applies in the other or make a holding to that effect without at least focusing on that distinction. Mr. Huzzack, since you're advocating remand as far as the Davis Trust is concerned, and you're I think at least surmised that there were no orphanages over the last maybe a number of years, would it be important for us to know or for the trial court to know whether, in fact, at the time the Blackman Will and Trust was created, there was existing an orphanage as such in Edgar County? No, because for the Blackman Trust, the language is dramatically different. The language of that instrument doesn't say that as long as the facility continues to operate, it says that the gift shall stand as long as the organization shall continue to operate, and that's a significant difference. If there is a provision in a gift that doesn't just devote charitable funds to a specific purpose or function or type of service, if they're not earmarked but it's a general unrestricted gift, then the gift goes to the organization for the general bundle of services that it provides. And the assumption there, and the law reflects this, is that it's entrusted to that organization to see how best to fulfill those services, which may vary somewhat over time. Again, there has to be sort of a tipping point where there's such a dramatic difference between what was done before and what may be done later that the organization no longer operates in any reasonably similar fashion to what it did before, and that would cause the gift over to be activated. But here, I think the record is sufficiently clear that the entity did not cease to exist. It may have ceased to exist, as the statute says, as a separate corporation, but it wasn't extinguished. It wasn't like it went through a receivership and its assets liquidated, and then somebody tried to buy up the assets, as happened in the Beck case discussed in the briefs. And here, the operation of the organization continued. They may have closed the facility, but so to answer your question, it would not be critical that the orphanage may still have been open at the time that the Blackman Trust, the operative time for when it should be interpreted. Thank you. Counsel, should we first focus on the intent of the settler and second on public policy? I think the two go together. They go hand in hand. It is an important public policy to honor the intent of the settler. That is a paramount consideration in all of these cases. The courts are not there to determine what would have been a better provision for the settler to have made. It is their job, given sometimes the limits of foresight as to how the world may change over time, but to determine what the settler's intent was. And I think the Campfire Girls case shows the care with which the courts assume that responsibility. And I say that the public policy is consistent with that, because these aren't taxes. These are gifts. These are gifts made by people who decide that it's important in our society for philanthropic reasons to devote resources to specific particular organizations or causes, and they're motivated to do so because they believe that that's going to be better for society. There are a lot of gifts that are made to educational institutions, to hospitals, and to organizations like this one. So I think the two really go hand in hand. There's no conflict there. There is the additional policy consideration here that this language is so common, and so a ruling with respect to the Blackmun Trust in particular is one that would have dramatic impact upon lots of other instruments that are out there. We can't say that the language ceased to exist for some idiosyncratic reason, and in this case meant something different than the same language drafted by lawyers throughout the state is going to have an entirely different meaning, especially when there's often much less, a little other information to be able to discern that. So we can decide the Blackmun Trust as a matter of law, but on the Davis Trust you're asking for remand and there are factual issues to be determined. That is correct. And as to the Blackmun Trust, as I've indicated in the Attorney General's brief, there's an additional consideration why the court can determine this as a matter of law, and that is that it's all documentary evidence. Even if there were an issue of fact that would normally be subject to some type of deferential review apart from the summary judgment posture in this case, it's sort of like a stipulated bench trial where there's no testimony. It's all documentary evidence, and the court has reaffirmed the rule recently this past term that in that case there's no deference given to the trial court's factual findings at all. It all becomes essentially a matter of law in the sense that it's a matter for the court of review to decide without deference to a trial court's decision. So we think the evidence on the Blackmun Trust and the law in other jurisdictions is sufficiently well established that there should be no difficulty in affirming the appellate court's decision. And I want to suggest that the appellate court's analysis here, focusing on the question whether, in light of a provision like this, the operative discussion should be whether there is, whether the successor organization is still suited to carry on the purposes that it was formed to create and that the creator of the trust intended it to fulfill at the time. And to say that a merger essentially breaks that, defies that intent, is I think as described in one of the cases, sort of a finicky legalism that has been eschewed by other courts. I see that I'm cutting into my co-counsel's time. Let me ask you this. Are the merger documents in the record? I believe they are. Yes, I believe they are, Your Honor. Would examination of the merger documents help answer the question about whether or not the organization continued to operate from the merged operations into the new entity? They are helpful, but there is also the other evidence to that effect, which is relevant. The merger instrument provides that the successor entity into which both prior entities merged commits to continue to carry out the functions and operations of the Edgar County Children's Home from before the merger. But there is also evidence that they actually did that. They continue to provide foster placement services and other services to children in Edgar County. And in response to Justice Garmon's comment, I think that continued operation is certainly important in giving the court Unless the court has other questions, I urge it to affirm the appellate court's decision and adopt the appellate court's reasoning as to both trusts. Thank you, sir. May it please the court, counsel. I don't know how much time I had. I understood we were sharing time. I may have none. Is that correct? The time has expired. That's what I thought. Thank you. I'm David Nelson on behalf of Kids Hope. I want to know how David got off so easy. I think, well, we've already made our arguments. Unless there's any questions that was brought up by Mr. Husbaugh's testimony, we're just going to rely on the argument we had. We think that the primary goal should be, and I understand there's a lot of policy and Kids Hope does a lot of good things, but what did these ladies want when they set it up? And they wanted to make sure the children's home was supported and they had other entities in Edgar County that they wanted to have taken care of, and we'd ask you to honor that intent. Thank you. Thank you. Case number 107787 will be taken under advisement.